IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VOICEFILL, LLC,<br><br>     Plaintiff,<br><br>vs.<br><br>WEST INTERACTIVE CORPORATION, WEST DIRECT, INC., WEST DIRECT, LLC, WEST DIRECT II, INC., and WEST CORPORATION,<br><br>     Defendants. | 8:11-CV-421<br><br>MEMORANDUM AND ORDER |

   This matter is before the Court on the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (filing 48) and the defendants' motion for hearing (filing 56). For the following reasons, the defendants' motion to dismiss is denied without prejudice to the filing of a properly supported motion for summary judgment, and their motion for hearing is denied.

## I. BACKGROUND

   Unless otherwise noted, the following facts are taken from the plaintiff's operative complaint or its attachments. The plaintiff, VoiceFill, LLC, is a California limited liability company and owner of United States patent no. 6,738,740 (the '740 patent). Filing 45 at 1,6. The defendant corporations, which will be referred to collectively as "West," are incorporated in several states, but each have the same principal place of business in Omaha, Nebraska. Filing 45 at 1-2. Although not specifically alleged in the complaint, the Court notes for context that West is, generally speaking, in the business of providing commercial voice communication services. *See* http://www.west.com/about (last visited May 29, 2012).

   VoiceFill's complaint generally alleges two claims: breach of contract and patent infringement. The breach of contract claim is derived from a June 30, 2004, contract between predecessor entities to VoiceFill and West: respectively, Vast, Inc., and NetByTel, Inc. Filing 45 at 3. Vast was founded by Kenneth Barash, inventor of the '740 patent. Filing 45 at 3. VoiceFill alleges that Vast and NetByTel entered into an agreement that involved development of voice-to-text applications. Filing 45 at 3-4. (As will be

explained in greater detail below, the '740 patent generally describes a method of using voice recognition technology for interactively gathering information to generate a document, and specifically focuses on loan applications. Filing 45-1 at 4.)

The agreement contained an intellectual property clause that specifically discussed the '740 patent. The agreement expressly provided that NetByTel did not, by virtue of the agreement, acquire any rights to the '740 patent. Filing 45 at 4; filing 45-2 at 3. The agreement also provided that:

> NetByTel agrees not to develop nor offer to develop, directly or indirectly, and shall restrict its employees from developing any software, system(s) or product(s) for telephonically determining satisfaction for loan applications which would compete with the VA Streamline and Traditional loan applications in English and any other foreign languages or any other products or services covered under [the '740] Patent and developed by NetByTel for [Vast], for any entity for the term of [the '740] Patent.

Filing 45 at 4; filing 45-2 at 3.

VoiceFill alleges that NetByTel, or substantially all of its assets, were sold to Tuvox, Inc., in March 2005. Filing 45 at 4. Tuvox, in turn, was acquired by West in July 2010. Filing 45 at 5. And Vast was acquired by VoiceFill in November 2011. Filing 45 at 5.

VoiceFill alleges that in each of those acquisitions, the acquiring party succeeded to the rights and obligations of its predecessor under the Vast/NetByTel agreement. Filing 45 at 4-5. VoiceFill acknowledges that Tuvox cancelled the agreement with Vast in April 2009, before VoiceFill and West made their respective acquisitions. Filing 45 at 4-5. But VoiceFill points to some provisions in the agreement that, according to VoiceFill, support the conclusion that VoiceFill and West are still subject to the intellectual property clause of the agreement. The agreement provided that upon termination of the agreement, the parties' obligations would cease, *except* that certain provisions, including the intellectual property clause, would remain in effect. Filing 45 at 5; filing 45-2 at 5. And the agreement provided that it would be binding upon the heirs, successors, and assigns of the parties. Filing 45-2 at 6.

VoiceFill claims that West is breaching the intellectual property clause of the agreement by developing products for telephonically completing loan applications, and other products that are covered under the '740 patent. Filing 45 at 6. In that regard, the breach of contract claim overlaps to an extent with the patent infringement claim.

The '740 patent "relates to a voice recognition system for interactively gathering information to generate a document." Filing 45-1 at 4. Generally, the patent describes a process by which a consumer—in particular, a loan applicant—can call an automated system that would use voice recognition technology to ask questions and solicit information from the consumer, generating a form that would be transmitted to another party, such as a loan officer. *See* filing 45-1. In particular, VoiceFill points to claim 11 of the patent, which describes

> A voice recognition system for interactively gathering information from a plurality of users over a communications network, comprising:
> - a remote device for establishing a voice connection with said system over the communications network;
> - a processor for generating and transmitting a plurality of verbal questions interactively to a user associated with said remote device to complete a textual document; and
> - a storage device for storing user's verbal responses to said plurality of questions to provide a verbal document; and
> - wherein said processor converts said verbal document into said textual document; and
> - wherein said processor is operable to transmit a portion of said textual document to a third party for verification or confirmation.

Filing 45 at 7-8, filing 45-1 at 7.

VoiceFill alleges that West is violating at least claim 11 of the '740 patent by making, using, or selling "systems that operate as voice recognition systems capable of interactively completing textual documents, including but not limited to . . . 'interactive voice response and speech recognition solutions.'" Filing 45 at 7. More particularly, VoiceFill alleges that

> [o]n information and belief, [West's] infringing systems contain a processor configured to generate and transmit verbal questions to callers via a voice connection with a remote device to receive verbal responses to the questions, which can relate to a wide range of topics, including but not limited to loan applications, insurance claims, purchase orders, bills of lading, etc.; the systems store the callers verbal responses and convert them to text, which is interactively supplied to a textual document; and the system transmits a portion of the textual document to a third

party, such as an underwriter, a live agent, a fulfillment center, etc., for verification and/or confirmation, thereby infringing one or more claims of the '740 Patent.

Filing 45 at 7.

VoiceFill alleges that West is directly infringing the '740 patent, under 35 U.S.C. § 271, by actively employing the systems described above. And VoiceFill claims that West is indirectly infringing the '740 patent by selling systems to its customers (who then become direct infringers) and because West's own customer callers directly infringe the patent by using the connected system. Filing 45 at 11. VoiceFill also alleges that West knew about the '740 patent because of its purported contractual duty, described above, not to infringe it. Filing 45 at 11. And VoiceFill contends that West has engaged in willful infringement of the '740 patent, making West liable for enhanced damages under 35 U.S.C. § 284.

West has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted (filing 48); the motion has been fully briefed (filings 49, 51, and 54) and evidence has been submitted (filings 50, 53, and 55).[1] West has also filed a motion for a hearing (filing 56), requesting oral argument. The details of the parties' arguments in support of and opposition to the motion will be discussed below.

## II. STANDARD FOR 12(B)(6) MOTION TO DISMISS

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. Gomez v. Wells Fargo Bank, 676 F.3d 655 (8th Cir. 2012). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. Ashcroft v. Iqbal, 556 U.S. 662 (2009). The complaint must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Fed. R. Civ. P. 8 does not, however, require a plaintiff to plead specific facts explaining precisely how the defendant's conduct was unlawful. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585 (2009). Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is

---

[1] The Court finds that none of the evidence submitted requires the motion to dismiss to be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d).

and the grounds upon which it rests, and allow the court to draw the reasonable inference that the plaintiff is entitled to relief. *Id.*

For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly, supra.* And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal, supra.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.*

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *Twombly, supra.* The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.*

### III. ANALYSIS

Although there is some overlap, for the most part, West's arguments in support of its motion are distinct with respect to the contract claim and the patent claim. So, the Court will address each claim separately. But first, the Court takes note of the evidence VoiceFill has submitted in opposition to West's motion to dismiss. It consists of several emails exchanged between the respective attorneys for VoiceFill and West, discussing amendment of VoiceFill's complaint and whether West would file a motion to dismiss. Filings 53-1, 53-2, 53-3, 53-4, and 53-5. The evidence is apparently intended to support VoiceFill's assertion that it has "gone above and beyond the call of duty in an attempt to persuade [West] not to burden the Court with this meritless motion." Filing 51 at 1.

It is not at all clear what VoiceFill expects the Court to do with this. VoiceFill has not filed a motion for sanctions under Fed. R. Civ. P. 11(c)(2), nor has VoiceFill argued for any other relief besides denial of West's motion to dismiss. As best the Court can tell, VoiceFill is simply trying to make the Court think poorly of West's counsel. But that tactic is counterproductive. VoiceFill's concern about burdening the Court is hard to take seriously when VoiceFill submits evidence and argument that are, in the absence of any

request for relief, a waste of the Court's time. And while the Court denies West's motion, the Court finds the motion far from frivolous.

The Court has given VoiceFill's evidence the attention it deserves: none. Going forward, the parties would be better served by focusing their attention on the issues that are actually before the Court. And it is to those issues that the Court now turns.

### 1. BREACH OF CONTRACT CLAIM

West argues that VoiceFill's breach of contract claim should be dismissed for failure to plead three necessary elements: (a) the existence of a valid contract, (b) a plausible breach of contract, and (c) damages.

### (a) Existence of Valid Contract

West's argument with respect to the validity of the contract is based on the fact that West and VoiceFill never had an agreement. Rather, VoiceFill's claim rests on its allegations that it succeeded to Vast's rights and obligations under the Vast/NetByTel agreement, and that West (via Tuvox) succeeded to NetByTel's rights and obligations—or, more precisely, that the parties are still bound by the intellectual property clause of the agreement despite Tuvox's termination of the agreement in 2009.

West takes issue with that theory on two grounds. First, West contends that once Tuvox terminated the agreement, there were no contractual rights or obligations left to assign or transfer upon West's acquisition of Tuvox. West's argument is not without some appeal. While the termination clause of the agreement expressly preserved some provisions post-termination, including the intellectual property clause, it did *not* preserve the binding effect clause, which provided that the agreement was binding upon the heirs, successors, and assigns of the parties. *See* filing 45-2 at 5-6. So even if Tuvox remained bound by the intellectual property clause, there is nothing in the agreement to suggest that Tuvox's successors would be equally bound, because the binding effect clause had been terminated.

But it is difficult to be certain of that in the absence of other information—for instance, the terms of West's acquisition of Tuvox, and the other acquisitions in the parties' respective "chains of title." The Court does note West's submission, in its reply, of an agreement between Tuvox and a purported successor of Vast that would have supplanted the Vast/NetByTel agreement. The Court declines to consider this evidence; if evidence outside the pleadings is to be considered, Fed. R. Civ. P. 12(d) requires that parties be given a reasonable opportunity to present all the material pertinent to the motion. VoiceFill has not been given such an opportunity, nor could it realistically have such an opportunity in the absence of meaningful discovery.

In short, while West's argument has some force, the issue it presents would be better evaluated in the context of a more developed record. VoiceFill alleges that West is bound by the agreement, and that allegation remains plausible, if not likely.

West's second ground for challenging the validity of the agreement is that according to West, Vast did not have legal capacity to enter into the agreement. West presents public records that it invites the Court to judicially notice, which indicate that Vast was dissolved before the agreement was entered into, and that Barash owned the '740 patent, not Vast.[2] But even if Vast had been dissolved, that does not preclude the possibility of a corporation de facto, or some other basis for enforcing the contract. *Cf.* [Nunamaker v. State, 116 So. 2d 450 (Fla. App. 1959)](); *see also* [Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304 (Fed. Cir. 2003)]() (discussing Florida law).[3] And the Court is aware of no reason that the parties could not contract to respect the '740 patent, even if the patent was owned by an officer of one of the corporate parties.

(b) Plausible Breach of Contract

West argues that VoiceFill has not sufficiently identified how West has breached any contract. West contends that VoiceFill neither alleges when the breach occurred, nor identifies which products or services provided by West breach the agreement.

But VoiceFill alleges that West's breach of the contract is ongoing—in other words, VoiceFill alleges that the breach is occurring *now*. And as will be explained in more detail below with respect to the patent infringement claim, the Court finds VoiceFill sufficiently alleges that West is providing products or services that infringe the '740 patent—and, thereby, breach the Vast/NetByTel agreement. VoiceFill also alleges that West's systems can be used for loan applications, which means that they would potentially compete with the products mentioned in the non-compete provision of the intellectual property clause. VoiceFill does not identify any products or services by trade name, but describes them generally, in terms of what they do.

This suffices to give West fair notice of what the claim is and the grounds upon which it rests. *See* [Gomez, supra.]() A plaintiff's allegation that "the defendant hit me with his car" would not be legally insufficient because

---

[2] A court may take judicial notice of some public records in deciding a motion to dismiss. *See* [Levy v. Ohl, 477 F.3d 988 (8th Cir. 2007)]().

[3] The Court cites Florida law because Vast and NetByTel were both based in Florida, and their agreement provided that it would be governed and enforced in accordance with Florida law. Filing [45-2]() at 2,6. But the Court does not decide any choice of law questions at this time.

the plaintiff did not allege the make or model of the vehicle. Now, it may be that the plaintiff could not do so because the defendant does not actually have a car—but that would be grounds for summary judgment, not dismissal for failure to state a claim.

(c) Damages

Finally, West argues that VoiceFill has not pled a claim for breach of contract because VoiceFill has not pled damages. Admittedly, VoiceFill's bare allegation that it "has been damaged due to West's breach of the NetByTel agreement" leaves something to be desired. But if nothing else, VoiceFill has alleged damages through the unlicensed use of its intellectual property. If VoiceFill proves that its patent has been infringed, it might be entitled to damages such as royalties or lost profits. *See generally Mitutoyo Corp. v. Central Purchasing, LLC, 499 F.3d 1284 (Fed. Cir. 2007); Glenayre Elec., Inc. v. Jackson, 443 F.3d 851 (Fed. Cir. 2006)*. VoiceFill could also seek injunctive relief from an ongoing infringement. *See*, 35 U.S.C. § 283; *Glenayre, supra.* In any event, given the nature of this case, it is hardly necessary for West to have a complete understanding of VoiceFill's damages in order to frame its answer. The Court finds that VoiceFill has sufficiently stated a claim for breach of contract.

2. PATENT INFRINGEMENT CLAIM

West takes issue with several aspects of VoiceFill's patent infringement claim. Specifically, West contends that VoiceFill's patent infringement claim should be dismissed because VoiceFill does not allege (a) the specific products, services, or methods developed or sold by West that infringe the '740 patent, (b) that West practices all of the '740 patent's claim limitations, or (c) that West had notice of the '740 patent or knowledge of direct infringement of the '740 patent by its customers.

The Court will address each point in turn. But as an overview, the Court takes note of Fed. R. Civ. P. App. of Forms, Form 18, which sets forth a complaint for patent infringement. Form 18 does so in very general terms, permitting the plaintiff to simply identify the patent and allege that the defendant is infringing the patent by making, selling, and using a product that embodies the patented invention. And Fed. R. Civ. P. 84 provides that the forms in the Appendix of Forms "suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Rule 84 "serves to emphasize that the forms contained in the Appendix of Forms are sufficient to withstand attack under the rules under which they are drawn, and that the practitioner using them may rely on them to that extent." Fed. R. Civ. P. 84 advisory committee's note. In this case, VoiceFill's allegations are no less

detailed than those exemplified in Form 18, creating at the very least a strong presumption that VoiceFill's allegations are sufficient to state a claim. *See* Fed. R. Civ. P. 84; *see also*, *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 778 F. Supp. 2d 667 (E.D. Va. 2011); *Braden Shielding Sys. v. Shielding Dynamics of Texas*, 812 F. Supp. 819 (N.D. Ill. 1992).

(a) Specific products, services, or methods

West argues that VoiceFill's allegations of direct infringement are insufficient because they "provide[] no factual specificity whatsoever regarding the specific products, services, or methods developed or sold by West that are alleged to infringe." Filing 49 at 16. West contends that VoiceFill's allegations regarding West's "'interactive voice response'" technology are legally insufficient because it is a "generic description of a technology that has existed for decades."[4] Filing 45 at 7; filing 49 at 16.

But a patentee need only plead facts sufficient to place the alleged infringer on notice. *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790 (Fed. Cir. 2000); *see also, e.g.*, *Braden, supra.*[5] A claim of direct infringement is sufficient if it alleges ownership of the asserted patent, names the individual defendants, cites the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law involved. *Phonometrics, supra*; *see also* *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007).

The Federal Circuit's decision in *McZeal, supra*, is instructive.[6] In that case, the plaintiff's complaint alleged his ownership of the patent, cited the specific patent allegedly infringed, described the means by which it was allegedly infringed, and cited the specific section of the patent law at issue. The district court had found those allegations insufficient because the

---

[4] That may be, in part, because the '740 patent itself rather generically describes a process for using existing voice recognition technology to automate the process of filling out a form. This may ultimately call into question the validity of the '740 patent. It may be that the '740 patent's claims are patent-ineligible because of their abstraction. *See*, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012); *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011); *see also*, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012); *Bilski v. Kappos*, 130 S. Ct. 3218 (2010). Or it may be that the invention was obvious. *See* *MySpace, Inc. v. GraphOn Corp.*, 756 F. Supp. 2d 1218 (N.D. Cal. 2010), *aff'd*, 672 F.3d 1250 (Fed. Cir. 2012). But those are affirmative defenses that are not yet before the Court. *See* *i4i P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010).

[5] On a purely procedural question not relating to patent law, such as whether a 12(b)(6) motion should be granted, the rules of the regional circuit apply. *See* *Phonometrics, supra.*

[6] The Court recognizes that the plaintiff in *McZeal* was entitled to some deference because he was *pro se*, unlike the plaintiff here. But based on its reading of the Federal Circuit's decision, the Court does not find that distinction to be meaningful.

plaintiff conceded that he did not know what device, mechanism, or means the defendant used to violate the patent. But, the Federal Circuit reasoned, "[a]t this stage in the litigation, all [the plaintiff] has access to is [the defendant's] public statements and advertisements. From this information he has fashioned his complaint. In this case, the specifics of how [defendant's] purportedly infringing device works is something to be determined through discovery." Id. at 1357-58. The same is true here. West has enough notice regarding its allegedly infringing products to be able to respond to VoiceFill's complaint, which is all that Fed. R. Civ. P. 8(a) requires.

(b) Performance of All Claim Limitations

West also suggests, briefly, that VoiceFill's complaint is defective because it only alleges that West violates *some* of the '740 patent's claim limitations. West does not fully develop this argument, but it seems to implicate the Federal Circuit's holding that direct infringement requires a single party to perform every step of a claimed method, and that accordingly, where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises control or direction over the entire process. See BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373 (Fed. Cir. 2007); *see also,* Desenberg v. Google, Inc., 392 Fed. Appx. 868 (Fed. Cir. 2010); Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318 (Fed. Cir. 2008). And indirect infringement requires a finding that at least one party has committed direct infringement. See BMC Res., Inc. This is a potentially serious obstacle to VoiceFill's infringement claim.

But the Court declines to dismiss VoiceFill's patent infringement claim on this basis, for three reasons. First, although West's argument seems to allude to this rule, West neither fully states the rule nor cites to the body of law that supports it. So, it is questionable whether VoiceFill has been given an adequate opportunity to respond to it.

Second, although VoiceFill alleges that West performs some of the steps in the claimed method, while its customers perform others, the complaint does not preclude the possibility that in at least some instances, one party exercises control or direction over the entire process, or that one user uses each and every element of the claimed system by putting the system into service. See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc., 631 F.3d 1279 (Fed. Cir. 2011); *see also* Muniauction, supra.

And third, last year the Federal Circuit granted rehearing *en banc* in an alleged joint infringement case and directed the parties to brief the question: "If separate entities each perform separate steps of a method claim, under what circumstances would that claim be directly infringed and to what extent would each of the parties be liable?" Akamai Techs., Inc. v. Mass. Inst.

*of Tech.*, 419 Fed. Appx. 989 (Fed. Cir. 2011). The rehearing *en banc* was argued and submitted in November 2011, but no decision has issued. *See* http://pacer.cafc.uscourts.gov/casedetail.asp?casenum=09-1372 (last visited May 29, 2012). So, there is a distinct possibility that should this case proceed to the summary judgment stage, the Federal Circuit will have provided additional guidance on the issues presented by joint infringement.

### (c) Notice

Next, West argues that the complaint is deficient because VoiceFill does not allege that West had knowledge of the '740 patent or intent to cause another to infringe the patent. VoiceFill responds that West's awareness of the '740 patent can be inferred from its contractual duty under the Vast/NetByTel agreement not to infringe the patent.

In this regard, VoiceFill's argument is off base. Notice to the infringer of a patent is required by 35 U.S.C. § 287(a), which provides that in cases (such as this one) involving an unmarked product, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." And notice is an affirmative act to be done *by the patentee*. *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320 (Fed. Cir. 2001) (citing *Dunlap v. Schofield*, 152 U.S. 244 (1894)). Thus, the correct approach to determining notice under § 287 must focus on the actions of the patentee, not the actions of the infringer. *Lans, supra.* Actual notice under § 287(a) must be an affirmative act on the part of the patentee which informs the defendant of infringement. *Lans, supra.* VoiceFill alleges no such act.

But that does not entitle West to dismissal, because § 287 also provides that "[f]iling of an action for infringement shall constitute such notice." In other words, VoiceFill has alleged that West is infringing the '740 patent, and the filing of this action has placed West on notice of the '740 patent and its alleged infringement. If VoiceFill can prove infringement, its damages might be limited by the timing of West's notice—but the failure to allege notice does not require dismissal.

West also contends that VoiceFill fails to state a claim for induced infringement because there is no allegation that West knew of and intended to encourage another's infringement. *See Fergusen Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327 (Fed. Cir. 2003). But VoiceFill alleges that West sold—and continues to sell—infringing products and services to its customers. That is sufficient to state a claim for indirect infringement. *See Glenayre, supra.* West also contends that there are no allegations to support a finding of willful infringement. The Court is not

persuaded that "willful infringement" is a separate claim subject to dismissal under Fed. R. Civ. P. 12(b)(6), but in any event, willfulness is not subject to an elevated pleading standard, *see Mega Sys., supra*, and insofar as West now has unambiguous notice of the '740 patent, VoiceFill is entitled to try and prove that any ongoing violation of the '740 patent was willful.

## IV. CONCLUSION

For the foregoing reasons, the Court denies West's motion to dismiss (filing 48), without prejudice to West raising some or all of the same arguments (or different arguments) on a more developed record in a motion for summary judgment. West also filed a motion for hearing (filing 56); obviously, that motion is also denied. The Court finds that oral argument, at this point, is unnecessary. But again, that does not preclude either party from requesting oral argument on a motion for summary judgment, at which point more complex issues might arise.

IT IS ORDERED:

1. West's motion to dismiss for failure to state a claim (filing 48) is denied.

2. West's motion for hearing (filing 56) is denied.

Dated this 29th day of May, 2012.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge